# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 1:17-sw-8
1281 QUAKER HILL DRIVE, ALEXANDRIA, VIRGINIA )
22314, WHICH IS A MULTI-LEVEL TOWNHOUSE )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, Property to Be Searched

located in the ___Eastern___ District of ___Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, Property to Be Seized

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance |

The application is based on these facts:
See attached Affidavit and Attachments, incorporated herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Reviewed by AUSA/SAUSA:

AUSA J. Tyler McGaughey

Special Agent Donald August Mockenhaupt, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/10/2017

_____/s/_____ JFA
John F. Anderson
~~United States Magistrate Judge~~
*Judge's signature*

City and state: Alexandria, Virginia

Honorable John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JAN 1 0 2017

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | **UNDER SEAL** |
| | ) | |
| 1281 Quaker Hill Drive, Alexandria, | ) | 1:17-sw-8 |
| Virginia 22314, which is a multi-level | ) | |
| townhouse | ) | |

**AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT**

I, Donald August Mockenhaupt, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed as such since February 2002. I am currently assigned to a squad that investigates violent gangs and criminal enterprises out of the Washington (D.C.) Field Office, Northern Virginia Resident Agency, and I have been assigned to this squad since August 2004.

2. As an FBI Special Agent, I have received extensive training in the enforcement of the criminal laws of the United States, as well as extensive training in criminal investigations. I have also participated in numerous investigations involving unlawful narcotics distribution. As part of these investigations, I have been involved in the application for and execution of many arrest and search warrants for narcotics related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, illegal drug proceeds, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through

1

my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers of controlled dangerous substances.

3. This affidavit is being submitted in support of a search warrant for the premises known as **1281 Quaker Hill Drive, Alexandria, Virginia 22314**, hereinafter the "SUBJECT PREMISES," further described in Attachment A, for the things described in Attachment B.

4. Based on my training and experience, I am aware that:

a. Individuals who distribute illegal controlled substances often maintain records relative to their drug trafficking activities. These records and documents are usually secreted in their places of residence, or the residences of family members, friends, or associates, in their businesses, or in the places of operation of the drug distribution activity such as a stash house or safe house. These documents often include ledgers, account books, calculations, or other notations which reflect inventories and quantities of narcotics purchased and distributed. The documents also may include "pay-owe sheets," which are documents that bear calculations, customers' names, quantities, and prices.

b. Individuals who distribute illegal controlled substances maintain documents, letters, and records relating to the illegal activity for long periods of time. This documentary evidence is usually secreted in their places of residence, or the residences of family members, friends, or associates, in their businesses, or in the places of operation of the drug distribution activity such as a stash house or safe house. This documentary evidence includes, but is not limited to, telephone numbers, telephone books, address books, credit card receipts, hotel receipts, train and bus tickets, car rental receipts, amounts and records in fictitious names, false identification documents, money orders, account notations, "pay-owe sheets," and other records

indicating the existence of storage facilities used in narcotics trafficking.

    c. Individuals who distribute illegal controlled substances attempt to legitimize the proceeds from the sale of controlled substances. They often accomplish this by using the services of banks, various financial institutions, and real estate brokers. Books and papers relating to such efforts, including but not limited to, cashier checks, money orders, telegrams, letters of credit and ledgers, are maintained in the residence and on the property of the drug trafficker.

    d. Individuals who distribute illegal controlled substances commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses and/or telephone numbers of their associates in drug trafficking. They also store such information, as well as photographs, messages, and personal notes, in electronic equipment including, but not limited to, computers, cellular phones, and other electronic software and mediums.

    e. Individuals who distribute illegal controlled substances often maintain, on hand and in their residences, large amounts of United States currency in order to maintain and finance their ongoing criminal activities.

    f. Individuals who distribute illegal controlled substances take, or cause to be taken, photographs of themselves and their associates in the drug trade, property derived from the distribution of narcotics, and their products, and such photographs are often kept in their residence.

    g. Individuals who distribute illegal controlled substances commonly keep packaging materials, scales, and other drug paraphernalia in their residences and on their property.

    5. This affidavit contains information necessary to support probable cause for the search and seizure warrant. The information contained in this affidavit is not intended to include

each and every fact and matter observed by or known to the affiant.

6. All information contained in this affidavit is either personally known to me, has been related to me by other law enforcement officers and/or confidential sources, or has been related to me by records and documents gathered during this investigation, as noted.

## PROBABLE CAUSE

7. The FBI and the Fairfax County Police Department ("FCPD") are investigating a heroin conspiracy operating in the Eastern District of Virginia and elsewhere. In March 2016, investigators identified ANTHONY LAVAR NORTON as a heroin distributor who lived in Texas but traveled to the northern Virginia area to distribute heroin. After identifying NORTON as a heroin distributor, investigators used a confidential informant ("CI") to conduct two controlled purchases of heroin directly from NORTON. During the first two controlled purchases, the CI purchased a total of approximately 43.7 grams of heroin.

8. Following the first two controlled purchases, investigators introduced an undercover police officer ("UC") to NORTON. Investigators then used the UC to conduct five controlled purchases of heroin from NORTON and one of his co-conspirators, ERIC DEMONT SCOTT. For each of the controlled purchases, the UC called NORTON and coordinated the transaction over the telephone. The UC then drove to a pre-arranged location in the Eastern District of Virginia, where the UC met with SCOTT. SCOTT delivered the heroin and collected the drug proceeds. Following the fifth controlled buy, where the quality of the heroin was substandard, NORTON provided the UC with an additional amount of heroin at no cost to make up for the substandard heroin. In total, the UC purchased or otherwise obtained 217.88 grams of heroin from NORTON and SCOTT.

9. Investigators conducted physical surveillance of SCOTT before and after several controlled purchases, and they have determined that SCOTT resides at the SUBJECT PREMISES.

A. <u>Controlled Purchases</u>

10. On or about June 6, 2016, the UC conducted a controlled purchase of approximately 34.53 grams of heroin from SCOTT in Alexandria, Virginia, within the Eastern District of Virginia. Following the controlled purchase, investigators observed SCOTT enter a gray Chrysler sedan with Virginia license plate number VHA9414. Investigators ran the license plate number in Virginia Department of Motor Vehicles (DMV) records, and it came back registered to a woman residing at the SUBJECT PREMISES. I then ran the SUBJECT PREMISES in a law enforcement database, and SCOTT was associated with that address.

11. On or about June 21, 2016, I drove past the SUBJECT PREMISES, and I observed SCOTT enter the gray Chrysler with Virginia license plate number VHA9414 and depart the area.

12. On or about June 23, 2016, the UC conducted a controlled purchase of approximately 30.08 grams of heroin from SCOTT in Alexandria, Virginia. Prior to the controlled purchase, investigators observed the gray Chrysler with Virginia license plate number VHA9414 parked outside of the SUBJECT PREMISES. Investigators observed SCOTT drive the gray Chrysler to National Harbor, where investigators believe that SCOTT met with one of his sources of supply to obtain heroin. Investigators then observed SCOTT driving back towards the SUBJECT PREMISES. Shortly thereafter, investigators observed SCOTT walking from the vicinity of the SUBJECT PREMISES to the meet location, which was a shopping center within close walking distance of the SUBJECT PREMISES.

13. During the controlled buy on or about June 23, 2016, SCOTT told the UC that he

was in possession of methamphetamine that he wanted to sell.

14. On or about July 7, 2016, the UC conducted a controlled purchase of approximately 56.13 grams of heroin from SCOTT in Alexandria, Virginia. Prior to the controlled purchase, investigators observed a gray Chrysler with Virginia license plate number VHA9414 parked in front of the SUBJECT PREMISES. Investigators followed the gray Chrysler from the SUBJECT PREMISES to National Harbor, where investigators believe that SCOTT met with one of his sources of supply to obtain heroin. Investigators followed the gray Chrysler from National Harbor to the meet location in Alexandria, Virginia, where investigators observed SCOTT get into the UC's vehicle in order to provide the UC with heroin.

15. On or about August 1, 2016, the UC conducted a controlled purchase of approximately 57.74 grams of heroin from SCOTT in Alexandria, Virginia. On the morning of the controlled buy, investigators observed a gray Chrysler with Virginia license plate number VHA9414 parked in front of the SUBJECT PREMISES. Immediately prior to the controlled purchase, investigators observed the gray Chrysler driving towards the meet location, and they performed surveillance as SCOTT entered the UC's parked vehicle and conducted the transaction. Following the controlled purchase, investigators observed the gray Chrysler drive back towards the SUBJECT PREMISES, and they observed it parked outside of the SUBJECT PREMISES.

16. On or about August 31, 2016, the UC conducted a controlled purchase of approximately 29.4 grams of suspected heroin from SCOTT in Alexandria, Virginia. Following the controlled purchase, investigators field tested the suspected heroin, and the test was inconclusive as to the presence of heroin. The suspected heroin is currently awaiting further analysis at the DEA Mid-Atlantic Laboratory. Following the inconclusive field test, the UC called

NORTON and complained about the quality of the heroin.

17. On or about September 7, 2016, SCOTT provided the UC with approximately 13 grams of heroin at no cost as a partial replacement for heroin that the UC purchased on August 31, 2016. The UC met SCOTT in the parking lot of a shopping center located within close walking distance of the SUBJECT PREMISES. Following the controlled purchase, investigators observed SCOTT walking back in the direction of the SUBJECT PREMISES.

B. SCOTT Currently Resides at the SUBJECT PREMISES

18. On or about October 4, 2016, I observed a silver Chevrolet Impala with a temporary license plate parked in front of the SUBJECT PREMISES in the exact same parking spot that the gray Chrysler had been previously observed. I queried Virginia DMV records for the Impala, and I learned that the vehicle was registered to the same woman as the Chrysler. On or about October 12 and 15, 2016, I observed the vehicle with temporary license plates in front of the residence.

19. On or about October 20, 2016, the UC made a recorded telephone call to NORTON. The UC asked if NORTON could provide approximately two-and-a-half ounces of heroin the next day. NORTON asked the UC if he would have $4,500 to purchase the heroin, and the UC replied that he would have the money.

20. On or about October 21, 2016, the UC made a recorded telephone call to NORTON. During the call, the UC told NORTON that he could not go forward with the heroin transaction because he was having car trouble. NORTON told the UC that he needed to pick up the heroin that day because his associate did not want to hold the heroin for much longer. Investigators believe that the associate that NORTON was referring to was SCOTT.

21. On or about December 22, 2016, investigators observed the Chevrolet Impala

referenced above outside of the SUBJECT PREMISES, but the vehicle had a permanent license plate with the same registration information. In addition, that same day, I observed SCOTT operating the vehicle approximately two blocks from the SUBJECT PREMISES.

22. On or about December 22, 2016, the Honorable Michael S. Nachmanoff, U.S. Magistrate Judge in the Eastern District of Virginia, issued a search warrant for location based services for SCOTT's cellular telephone number (202) 352-2100. I reviewed the data for the time period of December 27, 2016 to the present, and the data is consistent with the device being located at the SUBJECT PREMISES on a daily basis.

23. I queried DMV records for SCOTT's driver's license information. According to the records, SCOTT's license is suspended but the associated address is the SUBJECT PREMISES.

## CONCLUSION

24. Based on the information provided in this affidavit, probable cause exists to believe that ERIC DEMONT SCOTT is involved in a conspiracy to distribute heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. There is also probable cause to believe that items and records, which are evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute heroin) are currently contained in the SUBJECT PREMISES. The items and records to be seized are more particularly described in Attachment B. Wherefore, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, I respectfully request

a warrant to search and authority to seize at the SUBJECT PREMISES those items identified in Attachment B.

Donald August Mockenhaupt
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 10th day of January, 2017.

_____/s/_____
John F. Anderson
United States Magistrate Judge
The Honorable John F. Anderson
United States Magistrate Judge
Eastern District of Virginia

9

## **ATTACHMENT A**

*Property to be searched*

The premises to be searched is located at 1281 Quaker Hill Drive, Alexandria, Virginia, 22314, within the city of Alexandria. The property is a multi-level townhouse, and it is the third unit from the end as one faces the front and counts left to right. The front side of the townhouse is comprised of red brick, and the front door is brownish red. The roof is comprised of dark gray shingles and there are two dormer windows. The numbers "1281" are affixed horizontally directly above the front door.

# **ATTACHMENT B**

*Property to be seized*

The items to be seized are evidence, fruits, and instrumentalities of any violations of Title 21, United States Code, Sections 841(a)(1) and/or 846, to include:

1. Illegal narcotics and drugs, including, but not limited to, heroin, a Schedule I controlled substance.

2. Records, receipts, notes, and other papers relating to the transportation, purchasing, packaging, and distribution of controlled substances.

3. Tickets, notes, receipts, and other items relating to domestic and international travel, including airline tickets, boarding passes, airline receipts, car rental agreements, commercial bus tickets, passports, and visas.

4. Records, invoices, receipts, statements, drafts, money orders, checks, and other items relating to real estate, banking, financial institutions, or wire transfers that demonstrate the obtaining, secreting, transfer, and/or concealment of assets and obtaining, secreting, transfer, concealment and/or expenditure(s) of money.

5. Mobile telephones, Blackberry devices, other mobile electronic devices used to communicate with others and the contents of such devices, to include contact lists, call logs, text messages, digital images, and communications applications.

6. United States currency (or its equivalent) and financial instruments.

7. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, in particular photographs of co-conspirators, of assets and/or controlled substances.

8. Address and/or telephone books, papers, and their contents, reflecting names, addresses, telephone numbers, including computerized or electronic address and telephone records.

9. Documents or items indicating occupancy, residency, rental and/or ownership of the SUBJECT PREMISES, including utility and telephone bills, cancelled envelopes, rental, purchase or lease agreements, and keys.

10. Paraphernalia for packaging, cutting, cooking, weighing and distributing heroin or methamphetamine, including but not limited to, scales, baggies, cutting agents and currency counting machines.

11. Any locked or closed containers including safes, and their contents, which could include any of the above listed evidence.